14 So.2d 861

**BJORKGREN et al. v. BJORKGREN.**

**No. 36757.**

June 21, 1943.

Rehearing Denied July 13, 1943.

C. Paul Phelps, of Ponchatoula, for plaintiffs and appellants.

Jesse H. Inman, of Baton Rouge, for defendant and appellee.

PONDER, Justice.

The plaintiffs, Mrs. Georgia K. Wells Bjorkgren and Mrs. Mertie Bjorkgren Hawkins, wife and daughter of Svante L. Bjorkgren, deceased, brought this suit against the defendant, William Wells Bjorkgren, son of Mrs. Georgia K. Wells Bjorkgren and Svante L. Bjorkgren, deceased, seeking to annul and set aside an inventory, a deed conveying real estate, an act of compromise and an act purporting to correct the description of certain real estate in connection with a settlement of the effects of the succession of Svante L. Bjorkgren. In the alternative, in event the court found the instruments legally executed and valid, the plaintiffs asked for an accounting. The suit is based on the ground that the instruments were executed in pursuance of fraudulent manipulations by the defendant to deprive the plaintiffs of their interests in the succession. The defendant interposed an exception of vagueness and a plea of prescription which were referred to the merits. Answer was filed, and the case was tried on its merits. The lower court gave judgment rejecting the plaintiffs' demands and dismissing their suit. The plaintiffs have appealed.

This suit is predicated on fraud. Fraud is never presumed and must be proven by those who allege it. Article 1848, R.C.C.

Svante L. Bjorkgren was married to Georgia K. Wells on July 27, 1882. During the existence of this community, real and personal property was acquired. Neither of the spouses owned any separate or paraphernal property. On July 9, 1930, Svante L. Bjorkgren died, leaving a

surviving wife, Mrs. Georgia K. Wells Bjorkgren, and two major children, Mrs. Mertie Bjorkgren Hawkins and William Wells Bjorkgren, issue of the marriage with his surviving wife. Another child, Alfred L. Bjorkgren, issue of this marriage, died sometime prior to his father's death.

On August 9, 1930, the widow and surviving heirs of Svante L. Bjorkgren, deceased, applied to the court and secured an order directing an inventory to be made of the movable and immovable property left by the deceased Svante L. Bjorkgren. The inventory, dated August 18, 1930, shows that Svante L. Bjorkgren, at the time of his death, owned in community with his surviving wife certain bank and homestead stock, notes, including notes to the amount of $9,900 signed by William Wells Bjorkgren and secured by a mortgage on 89.1 acres of real estate, $1,253 cash in the Ponchatoula Bank and Trust Company and an undivided three-eighths interest in a certain store building in the Town of Ponchatoula. The deceased's one-half interest in the community property was appraised at $12,636.64. The inventory shows that the deceased owned in addition an undivided one-sixteenth interest in the store building in Ponchatoula appraised at $500. The total inventory shows that the deceased's property had a value of $13,136.64.

On August 19, 1930, the day after the inventory was made, the widow and surviving heirs entered into a compromise agreement before a notary and two witnesses whereby the bank and homestead stock, cash on deposit in bank and three

notes, all appraised at $22,745.66, were divided in the following manner: One-half to Mrs. Georgia K. Wells Bjorkgren; one-fourth to William Wells Bjorkgren and one-fourth to Mrs. Mertie Bjorkgren Hawkins, subject to an indebtedness due the succession by Mrs. Mertie Bjorkgren Hawkins of $5,000. It was further agreed in the instrument that William Wells Bjorkgren transferred his one-fourth interest to his mother, Mrs. Georgia K. Wells Bjorkgren, in consideration of the release of certain mortgage notes calling for $9,900 owned by the community. On September 5, 1930, the surviving wife and heirs were sent into possession of the estate of Svante L. Bjorkgren in pursuance to the inventory.

We find in the record an undated instrument signed by the widow and heirs of Svante L. Bjorkgren, deceased, wherein it was agreed that the estimated and accepted value of William Wells Bjorkgren's interest in the succession of $5,540.86 was transferred to Mrs. Georgia K. Wells Bjorkgren to be applied on the ten notes, dated July 31, 1929, and identified with a certain act of sale and mortgage, in the following manner: The delivery of the five first maturing notes and a credit of $540.86 on the sixth note. This instrument has reference to the notes amounting to $9,900 due the community.

William Wells Bjorkgren acquired by deed 89.1 acres of land from his father, Svante L. Bjorkgren, prior to his death for a consideration of $10,000. $100 was paid in cash at the time the deed was executed, and ten notes, payable over a period of ten years and secured by mort-

gage, were given. These are the notes referred to in the afore-mentioned instruments. These notes were listed in the inventory as assets of the community. The only item listed in the inventory representing cash was $1,253.20 in the bank checking account. In the compromise agreement, the notes and the cash in bank were lumped in one sum of $11,153.20 and listed as a cash item. This is clearly shown by a preponderance of the evidence in this case.

Sometime before the death of his father, Svante L. Bjorkgren, and the death of his brother, Alfred L. Bjorkgren, the defendant and his brother acquired the property in the Town of Ponchatoula referred to as the store building. The property was owned in equal proportions, one-half to each. Sometime after this property was purchased, the defendant sold an undivided three-eighths interest in the property to his father for $3,000. This three-eighths interest was listed in the inventory as the property of the community, but it was not included in the compromise agreement. It appears that this property was not properly described in the deed when William Wells Bjorkgren and Alfred L. Bjorkgren acquired it from Bernard Antony. Prior to March 22, 1935, the defendant made application to the Jefferson Standard Life Insurance Company for a loan of $2,000 on this property. In order to secure the loan, it was necessary to correct the description in the deed. On March 22, 1935, the heirs of Bernard Antony executed an act before a notary public and two witnesses to correct the description of the property. The plaintiffs, Mrs. Georgia K. Wells Bjorkgren

and Mrs. Mertie Bjorkgren Hawkins, intervened in this act and deeded to the defendant all of their rights, title and interests in the store property located in Ponchatoula, Louisiana.

It appears that during the community, Mrs. Georgia K. Wells Bjorkgren acquired a house and lot in Ponchatoula and some stock, the amount of which is not disclosed by the record, with community funds. These items were omitted from the inventory purposely. It was the desire of all the parties that the mother should own the house as her home and the stocks in her own right.

The inventory was only signed by one witness. However, the judgment of the court and the compromise agreement were all predicated on the inventory. All of the property, with the exception of the house and the stock held by the mother, was properly listed in the inventory.

The plaintiffs contend that the inventory in this succession should be annulled and set aside for the reason that it was signed by only one witness; in other words, that the inventory was not clothed with the formalities required by law. They do not point out any error in the listing of the effects of the succession nor do they claim that any of the property of the succession was omitted from the inventory.

Inventories are not binding and may be corrected to conform to the true facts. There could be no valid reason to set aside the inventory and incur the additional expense of making another one where the only error complained of is

that the inventory did not comply with a formality required by law. Succession of Price, 197 La. 579, 2 So.2d 29.

■ Moreover, the surviving spouse and the heirs were sent into possession of all the property listed in the inventory by judgment of court, and the surviving widow and heirs entered into a compromise settlement of almost all of the effects listed in the inventory. Even though the inventory were set aside, the judgment and the compromise agreement are in effect.

The plaintiffs contend that the deed to the 89.1 acres of land from Svante L. Bjorkgren, prior to his death, to William Wells Bjorkgren is a donation inter vivos and should be annulled.

It appears from the evidence that at the time this sale was made the deceased had decided to retire from farming and to sell the farm property to his son. The notes representing the unpaid portion of the purchase price were listed in the inventory and released to the defendant in the compromise agreement in consideration of the transfer to his mother of his interest in the succession. An undated instrument signed by the parties to this suit recites that these notes were given a credit of $5,540.86. The evidence shows that the balance due by the defendant with respect thereto was subsequently paid.

■ The only evidence touching the value of this property consists of the testimony of the plaintiffs who testified that the property was worth $50,000 and the testimony of the defendant who placed the value at $10,000. The defendant also testified that he would take $10,000 for the property. The evidence fails to disclose that the acquisition of this property was brought about through any fraud.

■ The plaintiffs testified that they did not know the purport of these instruments when they signed them some ten years ago. However, they accepted their respective portions of the estate in pursuance to the compromise agreement and did not complain until this late date. They were all majors at the time the instruments were signed. We do not think the evidence is sufficient to warrant a comclusion that the transfer of the property was a donation in disguise.

■ The plaintiffs contend that the act correcting the description to the store property in Ponchatoula should be annulled insofar as it divests them of their interest in the property because of a failure of consideration, and, in the alternative, that it should be voided for lesion beyond moiety.

It appears that the three-eighths interest in this property owned by the community and the one-eighth interest owned by the deceased was listed in the inventory and listed in the judgment sending the surviving spouse and heirs into possession. However, it forms no part of the compromise agreement and settlement. The evidence shows that the surviving spouse received one-half of the rent derived from this property until the act of correction was passed in 1935. The testimony of the plaintiffs is to the effect that they did not sell their interest in this property to the defendant and received no consideration

therefor. The defendant testified that 'it was agreed between him and the plaintiffs in the settlement of the succession that the plaintiffs' interest in the store property was to go to him upon the payment of $1,000 to his mother with the understanding that he would relinquish whatever interest he held in the house and stocks standing in his mother's name. The defendant also testified that he had paid his mother $500 prior to the execution of the deed of correction, and that he subsequently paid the $500 balance. The testimony of the defendant is corroborated by the testimony of the attorney who handled the succession and before whom, as notary public, the act of correction was passed. There is a letter in the record from the manager of the Standard Life Insurance Company, dated January 5, 1935, to another official of that company stating that the defendant had applied for a loan of $2,000 on this property. In this letter it is stated that the defendant was particularly anxious to secure the proceeds of this loan to buy out his mother's interest of $500 in the store property and to use $750 of the balance to retire the mortgage on the 89.1 acres of land previously acquired by the defendant. In order to secure the proceeds of this loan, it was necessary to correct the description in the prior deed wherein William Wells Bjorkgren and Alfred L. Bjorkgren, deceased, acquired the property from Bernard Antony. When the act of correction was passed, the plaintiffs intervened and transferred their interest in this property to the defendant.

The settlement of the succession was very irregular. The mother received the house in Ponchatoula and certain stocks, in addition to the portion she received in the written compromise agreement and settlement, which were not listed in any of the succession proceedings. Certain indebtedness due by the sister, Mrs. Mertie Bjorkgren Hawkins, was paid, which was not listed in the succession proceedings. Consequently, in arriving at just what did transpire with respect to this property depends on the testimony adduced. If we were to accept the plaintiffs' testimony, there would be merit in their contentions. However, if we accept the defendant's testimony and corroborating evidence, there is no merit in them.

The lower court was in a better position to evaluate the testimony for the reason that it had the opportunity of observing the manner in which it was given. A number of prominent citizens testified to the defendant's good reputation and as to his integrity in business transactions. The defendant has been in possession of the property since the correction deed was passed in 1935, and no effort was made to disturb his ownership until the present suit was filed.

Considering all of the evidence in this case, it appears that all of the parties received their fair proportion of the estate irrespective of the irregular proceedings. Under the circumstances, we would not feel disposed to disturb the holding of the trial court. To say the least, the plaintiffs have not borne the burden of proof required of them.

For the reasons assigned, the judgment of the lower court is affirmed at appellants' cost.